## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

MATTHEW STARNES,                                 Case No. 18-CV-0618-NEB-KMM

                        Petitioner,

v.                                               **REPORT AND RECOMMENDATION**

TOM ROY,

                        Respondent.

---

This matter comes before the Court on Petitioner Matthew Starnes's Petition

Under § 2254 for Writ of Habeas Corpus by a Person in State Custody, ECF No. 1

(Petition).  *Cf.* Mem. of Law for Habeas Corpus Pet. Under 28 U.S.C. § 2254, ECF No. 3

(memorandum supporting Petition) (Memorandum).  For the reasons discussed below,

the Court recommends denying the Petition and dismissing this action with prejudice.

## I.    BACKGROUND

### A.    *Underlying Incident*

In its decision addressing Mr. Starnes's direct appeal, the Minnesota Court of

Appeals described as follows the conduct that led to Mr. Starnes's arrest:

> Appellant Matthew Starnes and victim R.G. were
> roommates at a homeless shelter located on the Anoka Metro
> Regional Treatment Center (AMRTC) campus.  On the day of
> the incident, R.G. was working in the kitchen when [Mr.
> Starnes] entered to prepare a meal for the following morning.
> Unaware that [Mr. Starnes] had permission to be in the
> kitchen, R.G. confronted [Mr. Starnes], telling [him] that he
> could not be there.  An argument ensued and R.G. struck [Mr.
> Starnes] in the face.  [Mr. Starnes] reported the incident to the

executive director of the shelter, who spoke with both individuals.

A short while later, R.G. left the shelter and walked to a nearby park. While R.G. was at the park, C.G., an AMRTC employee, was driving and noticed him. C.G. stopped at an intersection as a black SUV approached the intersection. The male driver of the SUV told C.G. to "just go." C.G. continued driving, looked in her rearview mirror, and saw R.G. running away from three men who had exited the SUV. R.G. saw a tall, skinny man get out of the driver's seat with a tire iron and [Mr. Starnes] exit the rear passenger seat with a metal object in his hand.

The driver caught up with R.G. and struck him with the tire iron in the back of the head. R.G. fell on the ground while the assailants continued assaulting him. R.G. testified that [Mr. Starnes] kicked him in the face, stabbed him near his eye, and stabbed him multiple times around his kidneys. C.G. testified that one of the individuals, whom she described as tall, skinny, and wearing a white shirt, was making a stabbing motion. Frightened, C.G. drove away and called her boss, who notified the police. Eventually, the men went back into the SUV and drove away, leaving R.G. on the ground.

R.G. was taken to Mercy Hospital where he was treated for his many injuries, including multiple stab wounds on his torso, a fractured rib, and a laceration to the back of his head. While at the hospital, R.G. was interviewed by a police officer and identified [Mr. Starnes] as one of the attackers.

[Mr. Starnes's] girlfriend picked [him] up from the shelter, saw a cut on his hand, and drove him to Unity Hospital. From the hospital, [Mr. Starnes] called 911 and reported that he had been assaulted. When the police officer who interviewed R.G. learned about [Mr. Starnes's] report, he took a statement from [Mr. Starnes], and after a brief investigation, arrested [him] at Unity Hospital.

*State v. Starnes*, No. A16-1028, 2017 WL 3013208, at *1 (Minn. Ct. App. July 17, 2017)

(footnote omitted).

**B.    Trial**

In September 2015, Minnesota authorities charged Mr. Starnes with two counts of second-degree assault with a deadly weapon; one count also charged him with inflicting substantial bodily harm.  *See* Register of Actions, *State v. Starnes*, No. 02-CR-15-6336 (Minn. Dist. Ct.), *available at* http://pa.courts.state.mn.us (last accessed July 10, 2019); *cf.* Minn. Stat. § 609.222 (second-degree-assault statute).

Mr. Starnes went to trial in January 2016.  *See Starnes*, 2017 WL 3013208, at *1. He did not deny fighting with Mr. Griffin in the park, but argued that he (Mr. Starnes) had acted in self-defense.  *See id.* at *2.  After several witnesses testified, "the district court learned that one of the jurors had been discussing the trial and her concern for her safety with other jurors."  *Id.* at *2; Jury Trial 404–08, *State v. Starnes*, No. 02-CR-115-6336 (Minn. Dist. Ct. Jan. 11, 2016) (Trial Transcript) (submitted to Court by Mr. Roy based on Order, ECF No. 14).  Mr. Starnes successfully moved for a mistrial, and the trial court planned to adjourn the case to a later date to pick a new jury.  *See Starnes*, 2017 WL 3013208, at *2.  But Mr. Starnes indicated that he did not want to wait for a new trial date, so he waived his jury-trial right and requested that the case proceed as a bench trial. *See id.*

At the end of the trial, the trial court found Mr. Starnes guilty on both counts.  *See id.*  "Instead of making written findings of fact and attaching them to the verdict sheet, the district court made oral findings of fact on the record and attached the transcript of the findings to the verdict sheet."  *Id.*  Neither party objected to this practice.  *See id.*  The trial court ultimately sentenced Mr. Starnes to 71 months imprisonment.  *See id.*

### C.    Direct Appeal

Mr. Starnes appealed his conviction to the Minnesota Court of Appeals.  *See id.*

Two briefs were filed on his behalf—one by appointed counsel, the other by Mr. Starnes

himself.[1]  These raised various arguments, only some of which are at issue in Mr.

Starnes's current petition.  As a result, the Court will further explore this earlier briefing

(and the Minnesota courts' handling of it) as needed below.

The Minnesota Court of Appeals affirmed Mr. Starnes's conviction in July 2017.

*See Starnes*, 2017 WL 3013208, at *1.  Mr. Starnes submitted a pro se petition for review

to the Minnesota Supreme Court, which summarily denied the petition in October 2017.[2]

### D.    Petition for Postconviction Review

On June 11, 2018—several months after he filed his Petition in this Court—Mr.

Starnes filed a petition for postconviction review with the trial court.  *See* Post-

Conviction Pet., *State v. Starnes*, No. 02-CR-15-6336 (Minn. Dist. Ct. June 11, 2018)

(Postconviction Petition); Mem. of Facts Argument and Law, *State v. Starnes*, No. 02-

CR-15-6336 (Minn. Dist. Ct. June 11, 2018) (Postconviction-Petition Memorandum).  A

---

[1] *See* Appellant's Br., *State v. Starnes*, No. A16-1028 (Minn. Ct. App. Dec. 27, 2016)
(Counsel Appeal Brief), *available in* Ex. List for Resp't's Answer to Pet. for Writ of
Habeas Corpus, ECF No. 10 (Respondents' Exhibits); Appellant's Pro Se Suppl. Br.,
*State v. Starnes*, No. A16-1028 (Minn. Ct. App. Jan. 20, 2017) (Pro Se Appeal Brief),
*available in* Resp't's Exs.

[2] *See* Pet. for Review to the Supreme Ct., *State v. Starnes*, No. A16-1028 (Minn. Aug. 15,
2017) (Petition for Review), *available in* Resp't's Exs.; Order, *State v. Starnes*, No. A16-
1028 (Minn. Oct. 17, 2017) (Minnesota Supreme Court Order), *available in* Resp't's Exs.
Mr. Starnes did not seek review in the U.S. Supreme Court.

different judge within the same district addressed the Postconviction Petition, denying it in October 2018.  *See* Order, *State v. Starnes*, No. 02-CR-15-6336 (Minn. Dist. Ct. Oct. 6, 2018) (October 2018 Order).[3]

Mr. Starnes filed a notice of appeal concerning the Postconviction Petition's denial, and the Minnesota Court of Appeals ordered Mr. Starnes to file his brief by February 8, 2019.  After Mr. Starnes failed to meet that deadline, the Court of Appeals issued an order giving him a "final opportunity to file and serve his brief" by March 6, 2019.  After Mr. Starnes missed that deadline as well, the Court of Appeals dismissed his appeal.[4]

## II.    ANALYSIS

The Petition asserts four grounds for relief.  *See* Pet. 7–16; Mem. 2–22.[5]  Two contain multiple subparts.  *See* Mem. 2–19 (discussing Grounds One and Two).  In what

---

[3] The Postconviction Petition was first assigned to the case's original trial judge.  *See* Oct. 2018 Order 1.  But after Mr. Starnes moved to disqualify that judge, the district's chief judge assigned the Postconviction Petition to another judge.  *See id.*

[4] *See* Not. of Appeal to the Ct. of Appeals, *State v. Starnes*, No. 02-CR-15-6336 (Minn. Dist. Ct. Dec. 13, 2018); Order, *Starnes v. State*, No. A18-2008 (Minn. Ct. App. Dec. 14, 2018), *available at* http://macsnc.courts.state.mn.us (last accessed Sept. 25, 2019); Order 1–2, *Starnes v. State*, No. A18-2008 (Minn. Ct. App. Feb. 22, 2019), *available at* http://macsnc.courts.state.mn.us (last accessed Sept. 25, 2019); Order 1–2, *Starnes v. State*, No. A18-2008 (Minn. Ct. App. Mar. 22, 2019), *available at* http://macsnc.courts.state.mn.us (last accessed Sept. 25, 2019).

[5] The Petition's pagination is not sequential; Mr. Starnes filed several unnumbered sheets of paper alongside a form's numbered pages.  Citations to the Petition are thus to the page numbers generated by the Court's CM/ECF docketing system. Similarly, because the Memorandum lacks page numbers, citations to it are to the numbers generated by the docketing system.

follows, the Court will address Mr. Starnes's claims in the order they appear in the
Petition.

### A.    Ground One

Ground One argues that comments that the trial judge made during Mr. Starnes's
trial and at his sentencing show that the trial judge (1) let her personal schedule undercut
her impartiality, and (2) determined Mr. Starnes's guilt by considering evidence outside
the trial record.  *See* Pet. 7–8; Mem. 2–6.  The Court recommends dismissing both
claims.

### 1.    Allegations Regarding Judge's Personal Schedule

#### a)    Factual background

Mr. Starnes's argument regarding the trial judge's personal schedule stems from
comments made after the judge granted the defense's motion for a mistrial.  *See* Mem. 2–
3; Section I.B *supra* (discussing mistrial).  At that point (on January 14, 2016), the trial
judge planned to schedule a new jury trial.  *See* Trial Tr. 325, 408–09.  While discussing
potential dates, the trial judge proposed February 17, 2016.  *See id.* at 413.  This was
several weeks out, but the trial judge noted that, among other problems with earlier dates,
she "ha[d] two nonconsecutive weeks that [she was] going to be out of the office," and
that "[s]elfishly the conflicts that this court has with two of those weeks involve[] airfare
and being out of the state."  *Id.*

As it happened, no February date was needed; as noted above, Mr. Starnes elected
to proceed with a bench trial.  *See Starnes*, 2017 WL 3013208, at *2.  That trial ended on
January 19, 2016, triggering certain procedural deadlines.  Under subdivision 2(a) of

Rule 26.01 of the Minnesota Rules of Criminal Procedure, "[i]n a case tried without a jury, the court, within 7 days after the completion of the trial, must make a general finding" of (as relevant here) guilty or not guilty. Subdivision 2(b) then (in relevant part) gives the trial court seven days after the general finding's entry to "make findings in writing of the essential facts." As a result, at trial's end, the trial judge had until January 26, 2016, to make its general finding, and then (assuming the general finding's entry that day) until February 2, 2016, to make written findings of essential facts.

The trial judge met those deadlines—indeed, Mr. Starnes's complaint is that she went too quickly. The court took the matter under advisement when the trial ended—i.e., the evening of Tuesday, January 19, 2016. *See* Trial Tr. 852. The court said that she planned to see counsel on "Thursday morning"—that is, on January 21, 2016—at which point she planned to give her general verdict. *Id.*

The planned meeting took place on January 21. *See* Verdict 1, *State v. Starnes*, No. 02-CR-15-6336 (Minn. Dist. Ct. Jan. 21, 2016) (Verdict Transcript), *available in* Resp't's Exs. The trial judge began by explaining an issue regarding the needed written findings:

> [W]e are here today because I indicated I would be issuing my decision this morning. And given Rule 26.01 subdivision 2(b), the court is required by rule to issue its general verdict 7 days, within 7 days of the close of the evidence. So I'm ahead of that time frame at this point in time. But it's also, the court is also then required to issue written findings within the 7 days of the general verdict. And I'm not available to do that next week. And so it's my intention today to do my general verdict and oral findings that are being transcribed by Madam Reporter. I will then have those findings transcribed and attached to an order. And there will be no separate

> formal findings of fact made.  I'm doing my best to comply
> with the rules given the fact that I'm not available next week.

*Id.* at 2 (statutory citation error in original).  The trial judge asked if either party objected

to this procedure; neither did.  *See id.* at 2–3.

Mr. Starnes now contends that the trial judge's conduct shows that she decided

upon her verdict—and made her findings of fact—hastily, with that haste triggered by her

"personal schedule."  Mem. 3.[6]  He argues that the trial judge "put her personal schedule

before her judicial schedule."  *Id.*  This, he says, violated Rule 2.1 of the Minnesota Code

of Judicial Conduct,[7] violated Canon 3 of the Code of Conduct for U.S. Judges,[8] and

denied him due process under the U.S. Constitution's Fourteenth Amendment.[9]  *See id.* at

3–5.  The Court will address these in sequence.

b)    Judicial-Conduct Codes

The parts of this claim based on judicial-conduct codes are nonstarters.  First, a

claim based on the Minnesota Code of Judicial Conduct cannot proceed in a federal

habeas action.  Under 28 U.S.C. § 2254(a), district courts can grant habeas petitions for

---

[6] The Court observes that while the trial judge said that she would be out of the office (and out of the state), the record does not conclusively show that her trip was personal in nature (as opposed to, say, being work-related).  Mr. Roy does not dispute the point, however, and it is unclear whether the trip's nature affects Mr. Starnes's argument.  The Court will therefore assume for present purposes that the trial judge's trip was a personal one.

[7] Rule 2.1 states that "[t]he duties of judicial office, as prescribed by law, shall take precedence over all of a judge's personal and extrajudicial activities."

[8] Canon 3 states that "a judge should perform the duties of the office fairly, impartially and diligently" (capitalization amended).

[9] The Fourteenth Amendment states, in relevant part, that no state "shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.

those "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties *of the United States*" (emphasis added).  This federal-law focus means that a § 2254 petitioner like Mr. Starnes cannot seek federal-court habeas relief for violations of state law, much less state codes of judicial ethics.  *See, e.g.*, *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citing authorities); *Houston v. Janssen*, No. 15-CV-3075 (WMW/HB), 2016 WL 3004792, at *8 (D. Minn. May 3, 2016) (same), *report and recommendation adopted*, 2016 WL 3014651 (D. Minn. May 24, 2016).

Second, Mr. Starnes's reliance on the Code of Conduct for U.S. Judges is similarly unhelpful; those rules apply to federal judges, not state judges.  *See* Code of Conduct for U.S. Judges, Introduction ("This Code applies to *United States* circuit judges, district judges, Court of International Trade judges, Court of Federal Claims judges, bankruptcy judges, and magistrate judges." (emphasis added)); *Davis v. Jones*, 506 F.3d 1325, 1332 (11th Cir. 2007) ("[O]ur habeas review . . . under § 2254(d) does not concern application of the . . . federal canons because they do not govern state judges."); *see also Railey v. Webb*, 540 F.3d 393, 415 (6th Cir. 2008) (citing, e.g., *Davis*).  And even if the state-court judge overseeing Mr. Starnes's trial was subject to the Code of Conduct for U.S. Judges, Mr. Starnes's § 2254 petition can succeed only if—as noted above—he shows that he is "in custody in violation of *the Constitution or laws or treaties* of the United States" (emphasis added).  The Code of Conduct for U.S. Judges is none of these things, so cannot ground § 2254 relief.

c)    Fourteenth Amendment

This leaves Mr. Starnes's claim that the trial judge's handling of her schedule violated his Fourteenth Amendment due-process rights.  For Mr. Starnes to secure habeas relief based on this claim, the argument must fit into one of the categories specified by § 2254(d):

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For this argument's purposes, Mr. Starnes does not point to any unreasonable factual determination.  *See* Mem. 3–5.  To fit within § 2254(d), then, his argument must fit within § 2254(d)(1)—that is, Mr. Starnes must show how the Minnesota courts' adjudication of his due-process claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law."

Applying this test poses a practical problem.  Mr. Roy concedes that Mr. Starnes properly exhausted state-court remedies for his due-process argument.  *See* Resp't's Answer to Pet. for Writ of Habeas Corpus 3–4, ECF No. 9 (Answer); *cf.* 28 U.S.C. § 2254(b)(1) (requiring § 2254 petitioners to first exhaust state-court remedies).  But as

far as the Court can tell, no Minnesota state court has adjudicated this claim: Mr. Starnes

did not make any related objection at trial, the Minnesota Court of Appeals did not

address the due-process argument, and the Minnesota Supreme Court's decision was a

summary denial.  The U.S. Supreme Court has recently explained what to do in such

circumstances:

> When . . . there is no reasoned state-court decision on the
> merits, the federal court must determine what arguments or
> theories . . . could have supported the state court's decision;
> and then it must ask whether it is possible fairminded jurists
> could disagree that those arguments or theories are
> inconsistent with the holding in a prior decision of this Court.
> If such disagreement is possible, then the petitioner's claim
> must be denied.  We have often emphasized that this standard
> is difficult to meet because it was meant to be.

*Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018) (citations and internal punctuation

omitted; second ellipses in *Sexton*).  Tweaking this wording slightly, this Court's task is

to (1) determine what arguments could have supported a decision by the Minnesota

courts rejecting Mr. Starnes's due-process argument, then (2) ask whether reasonable

jurists could deem those arguments consistent with the Supreme Court's due-process

precedents.  If they could, this Court must reject Mr. Starnes's due-process argument.

   Under the resulting analysis, this Court recommends denying Mr. Starnes's due-

process claim.  Courts analyze such claims with a two-step process.  The first step is that

a plaintiff must show that he has been deprived of a protected liberty or property interest.

*See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972); *Wickner v. Rose*,

No. 17-CV-1214 (DWF/DTS), 2019 WL 3976203, at *7 (D. Minn. July 3, 2019), *report

and recommendation adopted*, 019 WL 3975678 (D. Minn. Aug. 22, 2019).  The Court

will assume for present purposes that Mr. Starnes can point to such a deprivation (i.e., his physical imprisonment).

A court then determines the amount of process due to the claimant by balancing "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake." *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 994 (8th Cir. 2016) (noting same factors (quoting *Booker v. City of Saint Paul*, 762 F.3d 730, 734 (8th Cir. 2014)).[10]

On this step, Mr. Starnes—who does not cite a single case in support of his due-process argument—cannot prevail. The question boils down to whether fairminded jurists could sensibly deny that a due-process violation occurred under the above test when the trial judge—after explicitly asking whether Starnes objected, and hearing that he did not—handed down her verdict and issued findings of fact within a few days of the trial's conclusion. The Court has little trouble concluding that fairminded jurists could find that decision consistent with due process. (Indeed, if anything, it seems that

---

[10] The Court observes that in cases where a federal court is assessing "'the validity of state procedural rules' that 'are part of the criminal process,'" the standard for whether a due-process violation occurred is harder to meet: for due process to have been violated in such situations, a criminal defendant must have been "exposed to a procedure offensive to a fundamental principle of justice." *See Nelson*, 137 S. Ct. at 1255 (quoting *Medina v. California*, 505 U.S. 437, 443 (1992)). It is unclear whether *Medina* applies here instead of *Matthews*. After all, Mr. Starnes is not challenging a state procedural rule here, but a trial judge's decision of how to balance her scheduling needs with certain Minnesota state-court rules. But the Court need not decide the question: as discussed in the text, even under the more-accommodating *Mathews* standard, Mr. Starnes's due-process challenge does not provide a successful ground for habeas relief.

fairminded jurists would all agree that there was no due-process violation here.)  Mr.

Starnes certainly does not explain how the trial judge's decision runs afoul of any

Supreme Court authority.  The Court thus recommends denying Mr. Starnes's due-

process claim based on the trial court's scheduling issues.

    2.    <u>Allegations Regarding Judge's Reliance on Outside Knowledge</u>

    a)    Factual Background

Ground One's second part asserts that the trial judge inappropriately determined

Mr. Starnes's guilt by relying on information outside the trial record.  *See* Pet. 8; Mem.

4–6.  This claim hinges on comments the judge made about Mr. Starnes's brother during

sentencing:

> [B]ased upon the testimony of Ms. Geving, the witness in the
> minivan, you came in a vehicle, you attacked Mr. Griffin, you
> and at least two other individuals attacked Mr. Griffin, just
> coincidentally one of those individuals matched the
> description of your brother, that person who's never been
> found.  I was able to observe during the course of the trial that
> you didn't have any brothers that were coming to the
> courtroom to support you are and I assume that was because
> they didn't want to expose themselves to law enforcement.

Felony Sentencing 29, *State v. Starnes*, No. 02-CR-15-6336 (Minn. Dist. Ct. Mar. 30,

2016) (Sentencing Transcript) (submitted to Court by Mr. Roy based on Order, ECF No.

14) (errors in original).

Mr. Starnes says that these comments show that the trial court relied on outside

evidence.  *See, e.g.*, Mem. 4.  According to Mr. Starnes, the comments reflected judicial

findings that (1) Mr. Starnes had a brother, (2) this person matched the description of a

person who assaulted Mr. Griffin, and (3) Mr. Starnes's brother had thus participated in

Mr. Griffin's assault. *See id.* at 5. These findings, Mr. Starnes asserts, are inconsistent with the trial evidence, so the judge could only have made them by relying on evidence outside the record. *See id.* at 5–6.[11] Mr. Starnes concedes that these comments occurred at sentencing—not at trial or during the verdict hearing—but he says that "there is no way to tell if these were thoughts that were on the mind of the trial judge during the trial because it is so difficult to separate the thoughts of the mind." *Id.* at 6.

Mr. Starnes contends that the trial judge's conduct here violated Rule 2.2 of the Minnesota Code of Judicial Conduct[12] and his Sixth Amendment right to be tried by an impartial factfinder.[13] *See id.* at 4–5. He also specifically suggests that the trial judge's conduct was inconsistent with the U.S. Supreme Court's decisions in *Rose v. Clark*, 478 U.S. 570 (1986), and *Liteky v. United States*, 510 U.S. 540 (1994). The State again accepts that Mr. Starnes exhausted his state-court remedies for these arguments. *See* Answer 3–4.

b)    Judicial-Conduct Code

With respect to the part of this claim asserting that the trial judge's comments reflect a violation of the Minnesota Code of Judicial Conduct, it is again dispositive that

---

[11] The trial-court judge knew Mr. Starnes's brother because she "presided in several traffic and gross misdemeanor cases" involving him between 2011 and 2015. *See* Counsel Appeal Br. 21 & n.5.

[12] Rule 2.2 states that "[a] judge shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially."

[13] The Sixth Amendment states, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." U.S. Const. amend. VI.

claims rooted in state law and state judicial-ethics codes cannot support federal habeas relief. *See Swarthout*, 562 U.S. at 219; *Houston*, 2016 WL 3004792, at *8. The Court thus recommends dismissing this part of Ground One.

c)      Sixth Amendment

(1)    Court of Appeals Decision

Mr. Starnes's Sixth Amendment claim is properly raised here, because he alleges a violation of his federal constitutional rights. The Minnesota Supreme Court's summary ruling did not address this argument. *See* Minn. Supreme Ct. Order. Where a state's highest court does not explain its ruling on an issue—but a lower court did—a federal court reviewing a § 2254 petition should "look through" to the highest-level state-court decision providing an explanation and assumes that the higher court adopted the same reasoning. *See, e.g.*, *Wilson v. Sellars*, 138 S. Ct. 1188, 1192 (2018); *see also Dougan v. Lewis*, No. 18-CV-6166 (SJ/ODS), 2019 WL 3082470, at *2 (W.D. Mo. July 15, 2019) (quoting *Wilson*); *Holloway v. Kelley*, No. 17-CV-0340 (JM/PSH), 2018 WL 3236122, at *6 n.7 (E.D. Ark. June 13, 2018) (same), *report and recommendation adopted*, 2018 WL 3236048 (E.D. Ark. July 2, 2018).

Mr. Starnes suggests that the Minnesota Court of Appeals did not consider his Sixth Amendment argument, *see* Mem. 6, but he is wrong. The Court of Appeals addressed this argument—and rejected it—as follows:

> [Mr. Starnes] next argues that he did not receive a fair trial because the district court demonstrated bias toward him at the sentencing hearing. We disagree.

15

"Due process requires that a judge have no actual bias against a defendant or an interest in a case's outcome." The Sixth Amendment of the United States Constitution establishes a criminal defendant's right to be tried by an impartial fact-finder. This principle has long been recognized as applying to bench trials. We review claims of judicial bias de novo.

"There is the presumption that a judge has discharged his or her judicial duties properly." "[A]dverse rulings by a judge, without more, do not constitute judicial bias." The party alleging bias has the burden to present evidence sufficient to overcome this presumption.

. . .

[Mr. Starnes] next contends that the district court used information outside of the record because it mentioned not seeing anyone who could be [Mr. Starnes's] brother during trial to support him and referenced the possibility of one of [Mr. Starnes's] brothers being involved in the assault. "An impartial trial requires that conclusions reached by the trier of fact be based upon the facts in evidence . . . and prohibits the trier of fact from reaching conclusions based on evidence sought or obtained beyond that adduced in court." "[A] reviewing court should place great confidence in a judge's ability to follow the law and should not assume that evidence was considered for an improper purpose without a clear showing."

Here, the record demonstrates that the district court relied on the evidence in finding [Mr. Starnes] guilty. [Mr. Starnes] has failed to overcome the presumption that the district court arrived at its finding of guilt or sentencing [properly[14]] because the record supports the district court's finding of guilt. Accordingly, we conclude that the district court's comments about [Mr. Starnes's] . . . brother do not support [Mr. Starnes's] contention that the district court demonstrated bias toward him.

---

[14] The word that appears here in *Starnes* is "improperly," *see Starnes*, 2017 WL 3013208, at *5, but the context makes clear that the Court of Appeals must have meant "properly" instead.

16

*Starnes*, 2017 WL 3013208, at *4–5 (citations omitted).

(2)      Cognizability

Mr. Starnes's precise complaint about the reasoning of the Court of Appeals is somewhat unclear, though it appears to involve a claim of legal error. Recall that Section 2254(d)(1) sets substantive limits on the sorts of legal errors that can ground § 2254 relief. *See* Section II.A.c *supra* (quoting § 2254(d)). Specifically, to claim that a legal error grounds one's habeas claim, one must show that a state court's adjudication of an issue "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Caselaw from both the Supreme Court and the Eighth Circuit fleshes out what is needed to show these kinds of legal error. Under § 2254(d)(1), a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court reaches the opposite result in a case involving facts that are materially indistinguishable from relevant Supreme Court precedent." *Davis v. Grandlienard*, 828 F.3d 658, 666 (8th Cir. 2016) (citing *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)).

In contrast, a decision is an "unreasonable application" of clearly established federal law "'if the state court correctly identifies the governing legal rule but applies it in an objectively unreasonable manner, unreasonably extends a legal principle to a new factual context where it should not govern, or unreasonably refuses to extend a principle to a context where it should apply.'" *Fenstermaker v. Halvorson*, 920 F.3d 536, 541 (8th

17

Cir. 2019) (quoting *Gouleed v. Wengler*, 589 F.3d 976, 981 (8th Cir. 2009)); *see also Williams*, 529 U.S. at 408–09, 413 (discussing unreasonable-application standards). For a decision to be an "unreasonable application," it is not enough for this Court to conclude that "'the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" *Fenstermaker*, 920 F.3d at 540 (quoting *Williams*, 529 U.S. at 411). Instead, one must show that the state court's handling of an issue was "'objectively unreasonable'"—that its decision "'was so lacking in justification that there [is] an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Williams*, 529 U.S. at 411; *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (brackets in *Fenstermaker*)).

Against this backdrop, Mr. Starnes's petition construed as claiming that the Minnesota Court of Appeals unreasonably applied clearly established federal law concerning one's right to an impartial trial.[15]

### (3)    Unreasonable-Application

As an initial point, given that Mr. Starnes's argument asserts an unreasonable application of federal law, the Court notes that "'[e]valuating whether a rule application was unreasonable requires considering the rule's specificity'"; "'[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664

---

[15] It appears that this is also how Mr. Roy views Mr. Starnes's claim. *See* Answer 20 (stating that Court of Appeals "reasonably concluded" that trial-court rulings did not violate *Liteky*).

(2004)).  Here, the rules purportedly applied unreasonably were quite general.  Mr.

Starnes cites *Rose* for the proposition that the Sixth Amendment requires that criminal

defendants face an impartial factfinder, and *Liteky* for the proposition that judges must

"approach every aspect of the case with a neutral and objective disposition."  *See* Mem.

4–5.  Given these rules' generality, the Court of Appeals had significant leeway to

determine whether the trial court's conduct violated the Sixth Amendment.

In this Court's view, the Court of Appeals did not unreasonably apply clearly

established federal law in finding that Mr. Starnes had not shown that the trial court acted

partially.  The Court of Appeals quoted the Minnesota Supreme Court's decision in *State

v. Dorsey*, 701 N.W.2d 238 (Minn. 2005), for the legal principle that "'[a]n impartial trial

requires that conclusions reached by the trier of fact be based upon the facts in

evidence.'"  *Starnes*, 2017 WL 3013208, at \*5 (quoting *Dorsey*, 701 N.W.2d at 249–50).

This principle is consistent with the relevant principles from *Rose* and *Liteky*.  The Court

of Appeals then concluded that (1) "the record demonstrated that the district court relied

on the evidence in finding [Mr. Starnes] guilty," and (2) "the district court's comments

about [Mr. Starnes's] . . . brother do not support [Mr. Starnes's] contention that the

district court demonstrated bias toward him."  *Id.*

The Court does not find these conclusions unreasonable, given the logic of Mr.

Starnes's argument and what was actually in dispute at trial.  Mr. Starnes seems to

suggest that the trial court's reliance on outside evidence caused the court to conclude

that Mr. Starnes was guilty.  *See* Mem. 5–6.  The path of this reasoning is presumably

something like this: (1) Ms. Geving's testimony included a physical description of one of

Mr. Griffin's attackers; (2) the judge, given her outside knowledge of Mr. Starnes's brother, believed that he matched that description; (3) the judge thus concluded that Mr. Starnes's brother was involved in the park fight; and (4) this made it more likely that the judge believed that Mr. Starnes himself was involved in the altercation.

The problem with suggesting that the trial judge impermissibly reasoned this way is that no one disputed at trial that Mr. Starnes fought with Mr. Griffin in the park. He admitted being in the fight. *See, e.g.* Trial Tr. 729–43 (containing Mr. Starnes's direct testimony discussing fight). His position was not that the fight did not involve him, but that he acted in self-defense. *See, e.g.*, *id.* at 843–51 (containing Mr. Starnes's closing argument). To be fair, in Mr. Starnes's account, his brother was not present at the fight; Mr. Griffin's other assailants were various unrelated bystanders. *See* Mem. 5.[16] But whether Mr. Starnes's brother was present did not bear on whether Mr. Starnes himself was involved in the fight; he definitely was. The Court of Appeals decision must therefore be considered in light of what was actually in dispute at trial—in particular, Mr. Starnes's claim of self-defense.

The statutory basis for Minnesota's self-defense defense is Section 609.06 of the Minnesota Statutes. The first subdivision lays out various circumstances in which

---

[16] There was conflicting evidence on this point. In particular, Mr. Griffin testified that one of his assailants—aside from Mr. Starnes—said things like "[Y]ou shouldn't put your hand on my brother" and "[Y]ou shouldn't have hit my brother, you shouldn't have hit my brother." Trial Tr. 249, 259. Because Mr. Griffin and Mr. Starnes had been in an earlier altercation, *see* Section I.A *supra* (quoting Court of Appeals decision), these statements suggested that Mr. Griffin's assailants may have included Mr. Starnes's brother.

"reasonable force may be used upon . . . the person of another without the other's consent[.]"  Included are situations where one is "resisting . . . an offense against the person"—i.e., an offense against oneself.  Minn. Stat. § 609.06 subd. 1(3).  Minnesota caselaw establishes that this defense's elements are "'(1) the absence of aggression or provocation on the part of the defendant; (2) the defendant's actual and honest belief that he or she was in imminent danger of . . . bodily harm; (3) the existence of reasonable grounds for that belief; and (4) the absence of a reasonable possibility of retreat to avoid the danger.'"  *State v. Devens*, 852 N.W.2d 255, 258 (Minn. 2014) (quoting *State v. Basting*, 572 N.W.2d 281, 285–86 (Minn. 1997) (ellipses in *Devens*)).

In Minnesota courts, self-defense assertions involve a two-step process.  The defendant has the initial burden of offering evidence sufficient to show all of the self-defense elements.  *See State v. Zumberge*, 888 N.W.2d 688, 694 (Minn. 2017) (citing *Basting*, 572 N.W.2d at 286); *State v. Espinosa*, No. A14-0742, 2015 WL 1513970, at *2 (Minn. Ct. App. Apr. 6, 2015) (citing *State v. Columbus*, 258 N.W.2d 122, 123 (Minn. 1977)).  If that is done, it then becomes the state's burden to disprove—beyond a reasonable doubt—at least one of the elements.  *See Zumberge*, 888 N.W.2d at 694 (citing *Basting*, 572 N.W.2d at 286); *Espinosa*, 2015 WL 1513970, at *2 (citing cases). The state must also show that the defendant's use of force "'exceed[ed] that which appears to be necessary to a reasonable person under similar circumstances.'"  *Espinosa*, 2015 WL 1513970, at *2 (quoting *Basting*, 572 N.W.2d at 285 (brackets in *Espinosa*)).

With this framework in mind, the Court can analyze the trial court's self-defense discussion at the verdict hearing.  The trial judge rejected the defense as follows:

So self-defense.  And in many ways this is what this case is all about.  Self-defense.  And self-defense means that the person used reasonable force against Richard Griffin to assist an assault, and such an offense was being committed with a person reasonably believed it was, because it is lawful for a person to defend himself from the attack when he has reasonable grounds to believe that he is going to be harmed.  And he can use all force and means reasonably necessary to prevent an injury to himself.  But the kind of degree of force that a person may lawfully use in self-defense is limited to what a reasonable person in the same situation would believe to be necessary.  Any use of force beyond that is regarded by the law as excessive.  There was no testimony of any type or kind in this case that Mr. Griffin was armed.

If Mr. Starnes' testimony was credible this court would have to conclude that it was reasonable for Mr. Starnes to use a dangerous weapon when the only weapon Mr. Griffin had was his hands and his feet.  Given that Mr. Starnes acknowledged he could have retreated,[17] it is not reasonable

---

[17] The relevant retreat-related testimony appears to be the following portion of Mr. Starnes's cross-examination:

> Q.    Mr. Starnes, you've already said that Mr. Griffin is much larger than you?
>
> A.    Yes.
>
> Q.    You're not a faster runner than he is?
>
> A.    I don't know.
>
> Q.    Fair to say you could have turned around and took off?
>
> A.    If I thought that I should have or I don't know, I just, it just didn't cross my mind.  I was shocked at the scene and plus I wanted to get my bag so that's what I was going to do, get my bag.
>
> Q.    So yeah, you could have taken off, you agree?
>
> A.    If I wasn't so shocked of the situation, yeah.

Trial Tr. 772.

> that Mr. Starnes would have used this box cutter and stabbed
> Mr. Griffin so deeply and so frequently. The State has the
> burden of proving beyond a reasonable doubt that the
> defendant did not act in self-defense and the State has
> satisfied this burden.

Verdict Tr. 12–13.

This discussion's upshot is that the trial court believed that the prosecution had

proven (beyond a reasonable doubt) that Mr. Starnes used more force than a reasonable,

similarly situated person would consider necessary to avoid harm. Because these were

the key points in the judge's reasoning, the identity of who helped Mr. Starnes was

immaterial.

Given that, the Minnesota Court of Appeals's relevant findings—that "[Mr.

Starnes] has failed to overcome the presumption that the district court arrived at its

finding of guilt or sentencing [properly]" and that "the district court's comments about

[Mr. Starnes's] . . . brother do not support [Mr. Starnes's] contention that the district

court demonstrated bias toward him"—are reasonable. This Court cannot discern how

these findings unreasonably apply *Rose* or *Liteky* or any other authority. As a result, the

Court recommends that this aspect of Ground One be dismissed.

In summary, none of the arguments in Ground One of the Petition can support §

2254 relief. The Court thus recommends dismissing Ground One.

### B.    *Ground Two*

Ground Two argues that "[t]he district court . . . made incompetent findings which

were shown to be clearly erroneous [and] defied logic and common sense." Pet. 11. Mr.

Starnes also claims that Minnesota's Court of Appeals, faced with this issue, "failed to

23

hear and decide [it] in its entirety, thus denying [Mr. Starnes] the right to be heard and neglecting [the court's] duty to decide." *Id.*; *see also* Mem. 13 (discussing Court of Appeals decision). Mr. Starnes raises (by the Court's count) eighteen purported mistaken factual findings. *See* Mem. 7–18. Mr. Roy concedes that Mr. Starnes properly exhausted his state-court remedies as to these claims of factual error. *See* Answer 3–4.

As noted above, § 2254(d) limits the types of claims that habeas petitioners can present, with § 2254(d)(2) cabining the factual-error claims that can ground a habeas petition. Under § 2254(d)(2), a habeas petition like Mr. Starnes's "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[18] When addressing a § 2254(d)(2) argument, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, 571 U.S. at 18 (quoting *Wood*, 558 U.S. at 301); *see also Schriro v. Landrigan*, 550 U.S. 465, 473

---

[18] Section 2254(e)(1) states that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct," and that furthermore, "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." The Supreme Court has yet to resolve how § 2254(d)(2) and § 2254(e)(1) interact, but has dealt with cases where the two standards might conflict by addressing the relevant factual-error claims with the more petitioner-friendly § 2254(d)(2) standard. *See, e.g.*, *Brumfield v. Cain*, 135 S. Ct. 2269, 2282 (2015); *Wood v. Allen*, 558 U.S. 290, 293 (2010). Because Mr. Starnes's petition should be denied even under the more-generous § 2254(d)(2) standard, the Court applies it here as well.

(quoting *Williams*, 529 U.S. at 410). In addition, "'[t]he existence of some contrary evidence in the record does not suffice to show that the state court's factual determination was unreasonable.'" *Ervin v. Bowersox*, 892 F.3d 979, 985 (8th Cir. 2018) (quoting *Cole v. Roper*, 783 F.3d 707, 711 (8th Cir. 2015) (brackets in *Ervin*)).

Having reviewed Mr. Starnes's various factual claims, the Court recommends denying Ground Two in full. Fundamentally, all of the purported errors that Mr. Starnes raises suffer from at least one of three legal infirmities that preclude granting habeas relief on those grounds.

First, some points that Mr. Starnes makes concern only perceived inconsistencies in trial testimony, without any associated trial-court factual determination. For instance, one of Mr. Starnes's arguments concerns whether there was an additional physical conflict between Mr. Starnes and Mr. Griffin—that is, one between the kitchen confrontation and the park fight. *See* Mem. 16–17. According to Mr. Starnes, (1) he testified that there was an intervening conflict; (2) Griffin testified that there was not; and (3) Kevin Martineau, a worker at the homeless shelter, testified that such a conflict had occurred. *See id.*; *cf.* Trial Tr. 269 (relevant Griffin testimony); *id.* at 646–47 (relevant Martineau testimony, including hearsay objection striking certain statements); *id.* at 722 (relevant Starnes testimony). As a threshold point, Mr. Martineau's admitted testimony does not entirely support Mr. Starnes. *See* Trial Tr. 646–47. But putting that aside, the trial court did not make any determination during the verdict hearing about whether the additional confrontation took place. The upshot is that whatever the merits of Mr.

Starnes's argument, it cannot show that the trial court made an unreasonable factual determination.

Mr. Starnes's argument regarding what Mr. Griffin admitted to Mr. Martineau about the initial kitchen argument has the same flaw. According to Mr. Starnes, (1) Mr. Griffin testified that during a conversation with Mr. Martineau, he (Mr. Griffin) had admitted to hitting Mr. Starnes in the kitchen; (2) Mr. Starnes testified that Mr. Griffin made no such admission; and (3) Mr. Martineau's account of the conversation backed up Mr. Starnes. *See* Mem. 16; *cf.* Trial Tr. 268 (relevant Griffin testimony); *id.* at 646 (relevant Martineau testimony); *id.* at 719 (relevant Starnes testimony). Again, even putting aside the fact that Mr. Martineau's testimony is less conclusive than Mr. Starnes suggests, the trial court never made a determination about whether Mr. Griffin admitted hitting Mr. Starnes. As a result, Mr. Starnes's argument again does not relate to any factual determination made by the trial court, much less show an unreasonable determination.

Several of Mr. Starnes's arguments are marred by a second, different problem: while he points to a trial-court factual determination, he does not show it was unreasonable. For instance, consider Mr. Starnes's argument about the trial court's verdict-hearing statement that Mr. Starnes misled a police investigator by suggesting that he had previously made a police report about the park fight. *See* Mem. 9; Verdict Tr. 15. A recording established that Mr. Starnes had told the investigator that he (Mr. Starnes) had "called the police and made a report and told them what happened." Trial Tr. 818. The prosecution had previously played a brief 911 call made by Mr. Starnes. *See* Trial

Tr. 800–01.  At the verdict hearing, the trial judge suggested that she considered Mr.

Starnes's claim to the investigator that he had "made a report" to be misleading—that is,

that he could not plausibly have considered the 911 call such a report, given how brief it

was and how little information Mr. Starnes had provided.  *See* Verdict Tr. 15.  It is

possible that, in the trial court's shoes, this Court would have accepted Mr. Starnes's

characterization of his 911 call as a "report" to the police.  But this Court cannot consider

the trial court's characterization unreasonable, particularly given that the trial court—

unlike this Court—actually heard the relevant recordings and saw the demeanor of the

relevant testifying witnesses.  Mr. Starnes thus did not show that the trial court's

determination was unreasonable.

Another example of this flaw in Mr. Starnes's argument involves the trial judge's

discussion contrasting Mr. Starnes's statement to the investigator with Mr. Starnes's own

trial testimony.  The trial judge stated here that "[i]n his statement [Mr. Starnes] said that

his girlfriend called him but in his testimony was that he called his girlfriend."  Verdict

Tr. 16.  Mr. Starnes argues that there was no inconsistency, the idea being that the trial

court's finding otherwise was unreasonable.  But reviewing the relevant recording and

testimony, this Court disagrees.  With respect to a call that occurred when Mr. Starnes

left the homeless shelter, but before the park fight, Mr. Starnes testified that he placed the

call to his girlfriend.  *See* Trial Tr. 728.  His recorded statement to the investigator, in

contrast, indicated that she had called him.  *See id.* at 815.  The trial court did make a

factual determination here, but it appears to have been a *correct* factual determination,

not an unreasonable one.

Finally, even where this Court agrees that the trial court made an unreasonable factual determination, this Court cannot conclude that the court's finding of guilt was "based on" those determinations. For instance, the trial court implicitly determined that Mr. Starnes's had contradicted himself concerning an earring. *See* Verdict Tr. 21 ("Mr. Starnes had talked about his earring being knocked out back at [the shelter, during the kitchen altercation], but the photograph of Mr. Starnes in the hospital showed him with an earring in his ear."). The Court agrees with Starnes that there was no contradiction here: Starnes testified to the earring being knocked out, but that he then replaced it in his ear and cleaned up the injury before leaving the shelter. Trial Tr. 715–17. There is nothing odd about the hospital picture showing an earring in Mr. Starnes's ear. The trial court's suggestion of a contradiction does seem unreasonable.

But even if the determination was unreasonable, this Court cannot conclude that the trial judge's finding of guilt was "based on" it. Simply put, Mr. Starnes's trial hinged on the trial court's attempt to determine whose account of the park fight was more accurate and credible—Mr. Starnes's or Mr. Griffin's. Among other witnesses with relevant testimony was Ms. Geving, and the trial court concluded that her account of the park fight was more consistent (though not perfectly so) with Mr. Griffin's. On review of the trial transcript, this Court cannot conclude that, had the trial court properly credited Mr. Starnes's earring testimony, it would have changed the trial judge's finding of guilt.

This is perhaps made most plain by the trial court's explicit discussion of Mr. Starnes's self-defense defense. As quoted above, the trial judge said that "[i]f Mr. Starnes' testimony was credible this court would have to conclude that it was reasonable

for Mr. Starnes to use a dangerous weapon when the only weapon Mr. Griffin had was his hands and his feet," and that "[g]iven that Mr. Starnes acknowledged he could have retreated, it is not reasonable that Mr. Starnes would have used this box cutter and stabbed Mr. Griffin so deeply and so frequently." Verdict Tr. 13. The trial court suggested that, even if she were to accept Mr. Starnes's account of the park fight, she would still conclude that Mr. Starnes's claim of self-defense failed. This means that Mr. Starnes's attempts to show that the trial judge improperly deemed Mr. Griffin more credible, even if they were more compelling, somewhat miss the point. On the trial judge's view, Mr. Starnes's defense failed even were Mr. Starnes's account given greater weight. Her finding of guilt thus plainly was not "based on" determinations such as that concerning Mr. Starnes's earring, even if they were incorrect.

The Court has carefully reviewed all eighteen of the alleged factual errors relied upon by Mr. Starnes, and none undermine the validity of the trial judge's verdict. Because none of Mr. Starnes's arguments shows that the trial judge based her finding of Mr. Starnes's guilt on an unreasonable determination of the facts, his various factual arguments fail to present any argument cognizable under § 2254(d)(2). The Court thus recommends denying Ground Two in its entirety.

### C.    *Ground Three*

The Petition's Ground Three contends that the trial court abused its discretion "by refusing to hear [Mr. Starnes's] motion to release his illegally seized phone." Pet. 13; *see also* Mem. 19–20 (discussing Ground Three). During a hospital interview, Mr. Starnes gave his phone to a police detective, and he claimed in a posttrial motion that it should be

29

returned to him.  *See* Sentencing Tr. 6–7.  The trial court denied that motion, agreeing

with the prosecution that until Mr. Starnes's appeals were exhausted, the State should be

able to retain the phone as potential evidence.  *See id.* at 7–8.

As part of a habeas petition, Mr. Starnes's return-of-phone claim is a nonstarter.

Numerous cases make clear that claims for the return of seized property are not

cognizable in habeas proceedings.  *See Hall v. Norris*, No. 09-CV-4078, 2010 WL

5071201, at *1 (W.D. Ark. Dec. 9, 2010); *see also, e.g.*, *Nance v. Heley*, No. 11-CV-1173

(ARR), 2012 WL 2953740, at *2 (E.D.N.Y. July 19, 2012) ("Petitioner's claim to recover

his personal property is not cognizable under habeas review under § 2254, which

authorizes relief only for 'a person in custody . . . in violation of the Constitution or laws

or treaties of the United States.'" (quoting § 2254(a); ellipses in *Nance*)); *Bowen v.

United States*, No. 05-CV-0037 (CDL), 2005 WL 1676668, at *2 (M.D. Ga. June 29,

2005) ("A writ of habeas corpus under 28 U.S.C. § 2254 is available for *persons* in

custody pursuant to the judgment of a State court.  Although petitioner argues that the

imprisonment of his property violates his constitutional rights § 2254 cannot be used to

challenge the forfeiture of the [property] seized.").

Because the relief Mr. Starnes seeks in Ground Three is not cognizable in a habeas

proceeding, the Court recommends dismissing Ground Three.

### D.    *Ground Four*

Ground Four of the Petition claims that "[t]he district court . . . based its entire

finding of credibility, evidence of guilt and conclusion of law erroneously."  Pet. 16.  Mr.

Starnes contends that this Court should apply a "clearly erroneous standard," and that

when it does so, the trial court's "finding should be reversed leaving the court with an insufficient evidence to convict Starnes." *Id.* This argument is not clear, but the Memorandum indicates that Ground Four is a challenge to the sufficiency of the evidence. *See* Mem. 20 ("Starnes argues that the court had insufficient evidence to convict him on.").

As noted before, on habeas review, this Court reviews the analysis of the highest-ranking court to address a given issue. *See, e.g.*, *Wilson*, 138 S. Ct. at 1192. Though Mr. Starnes presented his sufficiency argument to the Minnesota Supreme Court, that court did not address the issue. *See* Minn. Sup. Ct. Order. The Court thus considers the Court of Appeals's sufficiency analysis:

> [Mr. Starnes] next argues that the evidence presented was insufficient to prove beyond a reasonable doubt that he was not acting in self-defense. We disagree.
>
> "When reviewing the sufficiency of the evidence leading to a conviction, we view the evidence in the light most favorable to the verdict and assume that the factfinder disbelieved any testimony conflicting with that verdict." This court "will not disturb the verdict if the [fact-finder], acting with due regard for the presumption of innocence" and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offenses.
>
> To support [Mr. Starnes's] conviction, the state must disprove [his] claim of self-defense beyond a reasonable doubt. The four elements of self-defense are:
>
>> (1) the absence of aggression or provocation on the part of the defendant; (2) the defendant's actual and honest belief that he or she was in imminent danger of . . . great bodily harm; (3)

the existence of reasonable grounds for that
belief; and (4) the absence of a reasonable
possibility of retreat to avoid the danger.

Additionally, even if a defendant meets the above
elements, his self-defense claim fails if he used unreasonably
excessive force under the circumstances.  The factfinder
makes the reasonableness determination.  On appeal, the
record must demonstrate that the state disproved at least one
of the elements of self-defense.

[Mr. Starnes] testified that R.G. attacked him right
outside of the shelter and began choking him while [Mr.
Starnes] was on the ground.  [Mr. Starnes] further testified
that he stabbed R.G. because [Mr. Starnes] was afraid he was
going to lose consciousness and was afraid for his life.  None
of the witnesses who testified on [Mr. Starnes's] behalf
personally observed the incident.  The district court found
that [Mr. Starnes's] use of force was not reasonable and that
[his] use of a weapon against R.G. was unwarranted.
Additionally, the district court found that [Mr. Starnes]
acknowledged that he had a duty to retreat, but did not do so.
We conclude that the district court, as the fact-finder, did not
clearly err in finding that the state proved that [Mr. Starnes's]
use of force was not reasonable and that [he] failed to fulfill
his duty to retreat.  Accordingly, sufficient evidence exists to
uphold [Mr. Starnes's] conviction.

*Starnes*, 2017 WL 3013208, at *6 (citations omitted; second brackets in original).

Where, as here, a § 2254 petitioner claims that a state court incorrectly found that

the trial evidence was sufficient to support a conviction, a federal habeas court reviews

the state-court decision under a "twice-deferential standard."  *Parker v. Matthews*, 567

U.S. 37, 43 (2012); *see also Harden v. Norman*, 919 F.3d 1097, 1101 (8th Cir. 2019)

(making similar point).  First, "evidence is sufficient to support a conviction whenever,

'after viewing the evidence in the light most favorable to the prosecution, *any* rational

trier of fact could have found the essential elements of the crime beyond a reasonable

doubt.'" *Parker*, 567 U.S. at 43 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)

(emphasis in *Jackson*)).[19]  Second, "a state-court decision rejecting a sufficiency

challenge may not be overturned on federal habeas unless the "decision was 'objectively

unreasonable.'"  *Id.* (quoting *Cavazos v. Smith*, 565 U.S 1, 1 (2011) (per curiam)).

This Court cannot conclude that it was objectively unreasonable for the Minnesota

Court of Appeals to reject Mr. Starnes's sufficiency challenge.  The crux of Mr. Starnes's

argument is that the Minnesota courts should have believed his account of the fight

between him and Mr. Griffin.  *See, e.g.*, Mem. 21–22.  But the trial presented competing

evidence; some supported Mr. Starnes's account, some supported Mr. Griffin's.

Unfortunately for Mr. Starnes, "a federal habeas corpus court faced with a record of

historical facts that supports conflicting inferences must presume . . . that the trier of fact

resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

*Jackson*, 443 U.S. at 326; *see also Cavazos*, 561 U.S. at 7 (quoting *Jackson*); *Williams v.*

*Norris*, 576 F.3d 850, 871 (8th Cir. 2009) (same).

Given the competing narratives regarding the fight, a rational factfinder could find

that the state disproved one or more elements of Mr. Starnes's self-defense defense.  As

for that defense's retreat element, even Mr. Starnes's testimony admits of competing

interpretations.  (The key testimony appears in footnote 17 *supra*.)  Taking that testimony

in the most prosecution-friendly light, a rational factfinder could conclude that the

---

[19] Because Mr. Starnes claims that the prosecution failed to disprove his self-defense
defense, the question is whether any rational factfinder could have found that the
prosecution disproved an element of that defense beyond a reasonable doubt.

prosecution proved (beyond a reasonable doubt) that Mr. Starnes could have retreated. As for the defense's requirement that a defendant not use unreasonably excessive force, the undisputed testimony about the force Mr. Starnes used also permits the inference adopted by the trial judge.  Mr. Starnes admitted using a boxcutter in the fight, while Mr. Griffin was unarmed.  Considering this in the most prosecution-friendly light, a rational factfinder could conclude that the prosecution proved (beyond a reasonable doubt) that Mr. Starnes used unreasonably excessive force.

Given these permissible interpretations of the trial evidence, the Court concludes that the Court of Appeals's findings were not objectively unreasonable.  The Court thus recommends that Ground Four be dismissed.

### E.   Conclusion

In summary, the Court recommends that each of the Petition's grounds for relief be dismissed.  As a result, the Court recommends that the Petition itself be denied in its entirety and that this action be dismissed with prejudice.

Recommending the Petition's denial requires that the Court address whether Mr. Starnes merits a certificate of appealability (COA).  A § 2254 petitioner cannot appeal an adverse ruling on his petition unless he is granted a COA.  *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner meets this standard when "'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner.'"  *Welch*

*v. United States*, 136 S. Ct. 1257, 1263 (2016) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

In this case, the Court concludes that it is highly unlikely that any other court, including the Court of Appeals for the Eighth Circuit, would treat the Petition differently than it is being treated here.  It is thus recommended that Mr. Starnes not be issued a COA in this matter.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Petitioner Matthew Starnes's Petition (ECF No. 1) be **DENIED**.

2.    This action be **DISMISSED WITH PREJUDICE**.

3.    No certificate of appealability be granted.

Date:  October 9, 2019                         *s/Katherine Menendez*
                                              Katherine Menendez
                                              United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).